UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| **ACQUINETTA LUMZY,** an individual | ) |
| | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| | ) |
| | ) |
| Vs. | ) Case No. |
| | ) |
| | ) |
| | ) |
| **KATOEN NATIE SPECIALITY CHEMICALS** | ) |
| **INC.**, A Delaware Corporation, **INSPERITY** | ) |
| **PEO SERVICES, L.P.**, A Texas Corporation, | ) |
| | ) |
| *Defendants.* | |

## COMPLAINT

Plaintiff Acquinetta Lumzy (hereinafter "Ms. Lumzy" or "Plaintiff"), files this
complaint against Defendants Katoen Natie Specialty Chemicals, Inc. ("KTN" or
"Defendant") and Insperity PEO Services, L.P. ("Insperity" or "Defendant") and in
support thereof states as follows:

### PARTIES, JURISDICTION AND VENUE

1.      Ms. Lumzy is an African American woman over 40 years of age and thus a
member of several protected classes.

2.      KTN is an entity organized under the laws of Delaware which, maintains its
offices in the Northern District of Florida.

3.      Insperity is an entity organized under the laws of Texas, which maintains its offices in the Northern District of Florida and maintains contractual relationship with KTN as servant, agent.

4.      Upon information and belief, Defendants have more than 1000 employees nationwide and over 150 employees in Florida.

5.      This action is brought pursuant to 42 U.S.C. §§2000(e) *et seq.*, 29 U.S.C. §§ 14 *et seq.,* and the Florida Civil Rights Act (FCRA). This Court has subject matter jurisdiction over the claims herein under 28 U.S.C. § 1331 and 28 U.S.C. 1367(a).

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to these claims occurred in the district.

7.      Plaintiff received a U.S. Equal Employment Opportunity Commission ("EEOC") Dismissal and Notice of Right to Sue letter dated June 23, 2021. See EXHIBIT A.

8.      Plaintiff brings this lawsuit ithin ninety days of receiving her right to sue letter.

## FACTS

9.      Plaintiff began her employment with Defendant Katoen Natie Specialty Chemicals, Inc. (hereinafter "KTN") in March 26, 2017 as an Operator. Plaintiff was hired with Pacesetter Personal Services to work as a temp to hire with KTN. On June 30, 2017, Plaintiff's probationary period ended. Plaintiff was one of the two female employees working in KTN's operations department. Plaintiff's primary duties as an Operator included preparing boxes, bags, labeling and operating packaging machine. Plaintiff directly reported to Operations manager Bert Van Soest.

10.     On or around August 2017, a lead coworker Mr. Gary (last name unknown) began making inappropriate sexual advances towards Plaintiff. When Plaintiff turned them down, Mr. Gray retaliated against her by keeping her from going to lunch, and writing her up for allegedly taking long breaks. Plaintiff expressed her concerns about Mr. Gray's retaliation to manager Mr. Rogen, however, nothing was done about it.

11.     Plaintiff's male coworkers continued to make sexually explicit comments targeting Plaintiff and her only other female co-worker. These comments would involve sexually explicit comments about Plaintiff's body parts. For example, her male coworkers would look at her hips and breasts and say, "Boys, I can ride that ass all day", and "I can suck that and you can suck that too". Moreover, they would make comments such as, "you gonna give me some of that banana pudding?", "can you handle this python?", "when you going to let me roll the wood?", "girl, you a show stopper with those jeans", "what will it take for me to get into those jeans?", and "I bet you are a big ole freak". Plaintiff would complain supervisors about these inappropriate comments. However, the supervisors would not take Plaintiff's complaint seriously at any occasions.

12.     On or around November 2017, Plaintiff requested management to receive forklift training for the purpose of better doing the job. The Management rejected her request. The same day, a management team member Ms. Skai (last name unknown), who would teach to drive forklift truck to employees, told plaintiff, "you can't learn to drive forklift truck, because you are a female. Driving a car is not the same".

13.     On or around January 2018, Plaintiff received her excellent performance evaluation by Mr. Rogen, where her performance was rated 4 out of 4, followed by a pay raise.

14.     On or around April 2018, Plaintiff decided to get a private forklift training and registered with an OSHA certified training center. Plaintiff learnt to operate forklift, and subsequently requested to operate forklift. However, from May through November 2018, management ignored Plaintiff's request and continued to deny her request to operate forklift.

15.     On or around June 2018, Plaintiff had approached Mr. Rogen to get forklift training by the in-house team. Mr. Rogen said, "ok" and asked Mr. Bert to set that up. Few days later, Mr. Rogen informed Plaintiff that another coworker "Daniel" (last name unknown) would train Plaintiff on operating forklift however, it has to be off the clock. By doing so Mr. Rogen awarded "Daniel" time and a half pay, whereas denied plaintiff any pay. Plaintiff first said yes. However, later realized that if something has to happen to her person while training on the job, she would not be covered for being off the clock. When Plaintiff informed Mr. Rogen that is has to be on the clock, Mr. Rogen said, "then you cannot be trained because off the clock would be the only way it is done."

16.     While Plaintiff would continue to receive inappropriate and unwelcome comments from her coworkers, on or around November 2018, a coworker named Adrian Harday grabbed Plaintiff from the back so tight that Plaintiff could feel his private part. Plaintiff resisted, however Mr. Hardey did not let her go for a substantial amount of time. Plaintiff was emotionally exhausted and immediately complained to

supervisors Bert and Rogen about Mr. Harday's behavior. In response, Rogen said, "boys will be boys", and Bert never said anything but walked out saying, "ok, ok, ok". Plaintiff is unaware of any action taken against Mr. Harday.

17.    In approximately November of 2018, a promotional opportunity opened up in KTN. The position was of a lead operator. Since Plaintiff had an excellent performance, Plaintiff got the promotion over many other interested male candidates, including Mr. Adrian Harday. Since Plaintiff's selection in the Lead Operator's position, her male coworkers took animus against her and began to mistreat her by ruining her reputation, discredit her qualification, and denying to comply with her assignments. Mr. Harday took it personally as he was passed over in this promotion. He constantly attempted to discredit Plaintiff and continued to harass her. Plaintiff brought this up to Mr. Rogen at multiple occasions. However, her complaints fell into deaf ears.

18.    On or around March 2019, as a Lead, Plaintiff gave an assignment to a coworker named Wendell Snow, who was in Plaintiff's team. He out rightly refused to perform and said "I will stay in my line, do what you do". Plaintiff reported to management about the ill-treatment of Mr. Snow and how Mr. Snow would not take her requests because of her gender. However, her line-manager Bert said, "they are men and they are behaving like men". Plaintiff was emotionally as well as physically exhausted due to the behavior of her male coworkers as well as by inaction of the management.

19.    In April 2019, Plaintiff had to undergo medical procedure and therefore went on a medical leave. When Plaintiff returned to work, there were over eight boxes of

damaged materials. Mr. Bert asked Plaintiff to fix them and put under Plaintiff's name. Plaintiff asked Mr. Bert why it was not done earlier, and why would Plaintiff have to do the job other coworkers didn't do. Plaintiff asked the question because fixing damaged boxes and putting them under her name would impact her performance. However, Mr. Bert said, "just get it done."

20.     Plaintiff continued to receive harassment and mistreatment from her coworkers and supervisors. During her transition from A shift to B shift, her coworker Mr. Jermato Simmons continued to make this transition rough for Plaintiff. For example, he would rarely complete his work and leave it for Plaintiff to complete when she would begin her shift. It was not only hard for Plaintiff to keep up with, but also very stressful to begin with a coworker's unfinished work. Mr. Simmons would continue to harass plaintiff even after Plaintiff notified him at multiple occasions.

21.     On or around January 2020, managers Mr. Bert and Mr. Thomas called Plaintiff into the office and tried to convince Plaintiff to quit from work. Plaintiff responded, "I am not a quitter." Mr. Thomas responded, "Acquinetta I don't like you." Plaintiff replied, "I am not here for you to like me, but to do my job that I have been hired to do."

22.     On February 29, 2020 Plaintiff received a text message on her personal phone from Lead Operator Mr. Simmons. The text message said, "Gimme some of dat sweet a\*\*." Following Monday, Plaintiff notified from the management, Mr. Bert and Mr. Thomas in particular, about how offensive the text was to Plaintiff. Both managers said they would check into it.  However, no one responded or informed Plaintiff about any outcome.

23.     From the day Plaintiff denied to quit, up until the day of her termination, defendants created paper trail as a pretext to terminate Plaintiff by writing up and emailing her with problems.

24.     Defendants retaliated against plaintiff from the time she made complaints to human resources about her experience of sexual harassment and discrimination. On March 11, 2020, Defendants terminated Plaintiff.

## COUNT I: SEXUAL HARASSMENT

### (Title VII of the Civil Rights Act)

25.     Ms. Lumzy re-alleges and incorporates by reference all other paragraphs of this complaint.

26.     Ms. Lumzy's male coworkers knowingly and repeatedly made inappropriate sexual advances and comments to Ms. Lumzy. The coworkers continued to touch her several times in an inappropriate and offensive manner.

27.     Ms. Lumzy was discriminated against, because of her sex, a protected class under Title VII of the Civil Rights Act of 1964.

28.     As a direct and proximate result of the Defendants discrimination, Ms. Lumzy was caused to suffer, and continues to suffer from mental pain and suffering, including emotional distress, anxiety, humiliation, embarrassment, and loss of enjoyment of life.

29.     As a direct and proximate result of the District's discrimination and retaliation, Ms. Lumzy was caused to suffer economic damages including loss of earnings, loss of wages, and loss of future earning capacity.

## COUNT II: SEXUAL HARASSMENT

### (Florida Civil Rights Act)

30.     Ms. Lumzy re-alleges and incorporates by reference all other paragraphs of this complaint.

31.     Ms. Lumzy's male coworkers knowingly and repeatedly made inappropriate sexual advances and comments to Ms. Lumzy. The coworkers continued to touch her several times in an inappropriate and offensive manner.

32.     Ms. Lumzy was discriminated against, because of her sex, a protected class under Florida Statute Section 110.1221; and Florida Administrative Code Chapter 60L-36.004(1).

33.     As a direct and proximate result of the Defendants discrimination, Ms. Lumzy was caused to suffer, and continues to suffer from mental pain and suffering, including emotional distress, anxiety, humiliation, embarrassment, and loss of enjoyment of life.

As a direct and proximate result of the District's discrimination and retaliation, Ms. Lumzy was caused to suffer economic damages including loss of earnings, loss of wages, and loss of future earning capacity.

## COUNT III: HOSTILE WORK ENVORINMENT

### (Title VII of the Civil Rights Act)

34.     Ms. Lumzy re-alleges and incorporates by reference all other paragraphs of this complaint.

35.     Ms. Lumzy was subjected to inappropriate and unwelcome conduct, both verbal and physical by her male coworkers.

36.     Ms. Lumzy has been discriminated against, because of her sex and race, both protected classes under Title VII of the Civil Rights Act 1964.

37.     Ms. Lumzy repeatedly reported discrimination and harassment to her supervisors. The supervisors knew or should have known about the discrimination and harassment. The supervisors entirely ignored Ms. Lumzy's complaints knowingly or in reckless disregard. Defendant KTN and Defendant Insperity maintained contractual relationship, such that Defendants KTN and Insperity were acting as the servant, agent. As such the Defendants are liable pursuant to the doctrine of *Respondeat Superior*.

38.     As a direct and proximate result of the Defendants' discrimination and retaliation, Ms. Lumzy was caused to suffer, and continues to suffer from mental pain and suffering, including emotional distress, anxiety, humiliation, embarrassment, and loss of enjoyment of life.

39.     As a direct and proximate result of the Defendants' discrimination and retaliation, Ms. Lumzy was caused to suffer economic damages including loss of earnings, loss of wages, and loss of future earning capacity.

## COUNT IV: GENDER DISCRIMINATION

### (Title VII of the Civil Rights Act)

40.     Ms. Lumzy re-alleges and incorporates by reference all other paragraphs of this complaint.

41.     Ms. Lumzy's male coworkers subjected her to harassment and repeated unwelcome sexual conducts, because of her being a woman. Ms. Lumzy's

supervisors denied her equal work opportunities as compared to her male coworkers because of her gender.

42.     Ms. Lumzy had been discriminated against, because of her gender, a protected class under Title VII of the Civil Rights Act of 1964.

43.     As a direct and proximate result of the Defendants discrimination and retaliation, Ms. Lumzy was caused to suffer, and continues to suffer from mental pain and suffering, including emotional distress, anxiety, humiliation, embarrassment, and loss of enjoyment of life.

44.     As a direct and proximate result of the District's discrimination and retaliation, Ms. Lumzy was caused to suffer economic damages including loss of earnings, loss of wages, and loss of future earning capacity.

## COUNT V: GENDER DISCRIMINATION

### (Florida Civil Rights Act)

45.     Ms. Lumzy re-alleges and incorporates by reference all other paragraphs of this complaint.

46.     Ms. Lumzy's male coworkers subjected her to harassment and repeated unwelcome sexual conducts, because of her being a woman. Ms. Lumzy's supervisors denied her equal work opportunities as compared to her male coworkers because of her gender.

47.     Ms. Lumzy had been discriminated against, because of her gender, a protected class under Florida Statute Section 110.1221; and Florida Administrative Code Chapter 60L-36.004(1).

48.    As a direct and proximate result of the Defendants discrimination and retaliation, Ms. Lumzy was caused to suffer, and continues to suffer from mental pain and suffering, including emotional distress, anxiety, humiliation, embarrassment, and loss of enjoyment of life.

49.    As a direct and proximate result of the District's discrimination and retaliation, Ms. Lumzy was caused to suffer economic damages including loss of earnings, loss of wages, and loss of future earning capacity.

## COUNT VI: RACIAL DISCRIMINATION

### (Title VII of the Civil Rights Act)

1.    Ms. Lumzy re-alleges and incorporates by reference all other paragraphs of this complaint.

2.    Ms. Lumzy was terminated from her employment on, March 12, 2020.

3.    Ms. Lumzy's race was a substantial motivating reason for Defendants' decision to terminate her employment.

4.    As a proximate result of Defendants' wrongful conduct, Plaintiff has suffered and continues to suffer humiliation, embarrassment, emotional Distress and mental anguish, all to her damage in an amount according to proof at the time of trial.

5.    Ms. Lumzy had been discriminated against, because of her race, a protected class under Title VII of the Civil Rights Act of 1964.

6.    As a direct and proximate result of the Defendants discrimination and retaliation, Ms. Lumzy was caused to suffer, and continues to suffer from mental pain and suffering, including emotional distress, anxiety, humiliation, embarrassment, and loss of enjoyment of life.

7.     As a direct and proximate result of the District's discrimination and retaliation, Ms. Lumzy was caused to suffer economic damages including loss of earnings, loss of wages, and loss of future earning capacity.

## COUNT VII: RACIAL DISCRIMINATION

### (Florida Civil Rights Act)

8.     Ms. Lumzy re-alleges and incorporates by reference all other paragraphs of this complaint.

9.     Ms. Lumzy was terminated from her employment on, March 12, 2020.

10.     Ms. Lumzy's race was a substantial motivating reason for Defendants' decision to terminate her employment.

11.     As a proximate result of Defendants' wrongful conduct, Plaintiff has suffered and continues to suffer humiliation, embarrassment, emotional Distress and mental anguish, all to her damage in an amount according to proof at the time of trial.

12.     Ms. Lumzy had been discriminated against, because of her race, a protected class under the Florida Civil Rights Act Section 760.01(2).

13.     As a direct and proximate result of the Defendants discrimination and retaliation, Ms. Lumzy was caused to suffer, and continues to suffer from mental pain and suffering, including emotional distress, anxiety, humiliation, embarrassment, and loss of enjoyment of life.

As a direct and proximate result of the District's discrimination and retaliation, Ms. Lumzy was caused to suffer economic damages including loss of earnings, loss of wages, and loss of future earning capacity.

## COUNT IX: RETALIATION

### (Title VII of the Civil Rights Act)

14.     Ms. Lumzy re-alleges and incorporates by reference all other paragraphs of this complaint.

15.     Based on the above-alleged conduct, Defendants retaliated against Plaintiff for complaining about unlawful discrimination and harassment.  Defendants retaliated against Plaintiff, including, but not limited to, constructively threatening to implement an adverse employment action, and wrongful termination.

16.     As a direct and proximate result of the Defendants discrimination and retaliation, Ms. Lumzy was caused to suffer, and continues to suffer from mental pain and suffering, including emotional distress, anxiety, humiliation, embarrassment, and loss of enjoyment of life.

17.     As a direct and proximate result of the District's discrimination and retaliation, Ms. Lumzy was caused to suffer economic damages including loss of earnings, loss of wages, and loss of future earning capacity.


## RELIEF REQUESTED

18.     Plaintiff restates and realleges incorporated by reference all other paragraphs of this Complaint.

19.     This civil action seeks on behalf of Plaintiff, legal and equitable relief including back pay for Plaintiff and payment of compensatory damages and punitive damages, together with attorney's fees and the costs of suit to Plaintiff in excess of

150,000 in an amount to be determined at trial pursuant for each of her counts and such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all claims asserted in the Complaint so triable.

Dated: September 17, 2021

Respectfully Submitted,

Acquinetta Lumzy
By Counsel:

Ben Crump, ESQ. Bar No.: *0072583*
Ben Crump Law
122 S. Calhoun St.
Tallahassee, Florida 32301
Tel: (800) 691-7111

Mika Hilaire, ESQ. Bar No.: _____
Equal Rights Law Group
15233 Ventura Boulevard, Suite 420
Sherman Oaks, CA 91403
Tel/Fax: (818) 305-6297